# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C., | : | 4:14-CV-0620 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| | : | |
| SCOUT PETROLEUM, LLC, and SCOUT PETROLEUM II, LP, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

APRIL 28, 2017

## I. BACKGROUND:

Plaintiff, Chesapeake Appalachia, LLC, hereinafter "Chesapeake," commenced the instant civil action on April 1, 2014, against Defendants, Scout Petroleum, LLC and Scout Petroleum II, LP (hereinafter, collectively, "Scout"). The two-count complaint was filed after Scout initiated arbitration proceedings against Chesapeake with the American Arbitration Association (hereinafter "AAA").

Count I is a demand for a declaratory judgment requesting that the Court decide whether it or the arbitrator is tasked to interpret the contract, commonly referred to as the "who decides" question. Count II is a demand for a declaratory

1

judgment contending that the contract does not permit class arbitration, commonly referred to as the "clause construction" question.

On October 16, 2014, I granted Chesapeake's motion for partial summary judgment on Count I and entered a declaratory judgment to the effect that the Court is to interpret the contract. Thereafter, I heard oral argument on Scout's motion for reconsideration, which I denied on December 19, 2014, and then certified that decision for interlocutory appeal. On January 27, 2016, the United States Court of Appeals for the Third Circuit affirmed my determination that a court, not an arbitrator, is charged with interpreting the clause at issue.

The parties are now before the Court for resolution of Count II, the "clause construction" question. Chesapeake moves for partial summary judgment requesting that the Court enter a declaratory judgment that the various contracts at issue do not permit class arbitration, only what is called individual or bilateral arbitration. Scout moves to dismiss the complaint arguing that Pennsylvania contract law permits class arbitration. Scout again requested oral argument on the motions and the parties were heard on April 5, 2017.

For the reasons that follow, Scout's motion will be denied, Chesapeake's motion will be granted, and final judgment will be entered in favor of Chesapeake.

## II.  DISCUSSION:

### A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" where it "might affect the outcome of the suit under the governing law."[2]  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."[3]

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[4] The moving party may satisfy this burden by either (I) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[5]

---

[1]  Fed. R. Civ. P. 56(a).
[2]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3]  *Id*.
[4]  *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).
[5]  *Id*. at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[6] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[7]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[8] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56©, the court may . . . consider the fact undisputed for purposes of the motion."[9]

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but

---

[6] *Anderson*, 477 U.S. at 250.
[7] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.
[8] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003).
[9] Fed. R. Civ. P. 56(e)(2).

instead to determine whether there is a genuine issue for trial.[10] Credibility determinations are the province of the factfinder, not the district court.[11] Although the court may consider any materials in the record, it need only consider those materials cited.[12]

**B. Facts**

In 2008, Chesapeake entered into various paid-up oil & gas leases with landowners in several northeastern Pennsylvania counties to explore for, and produce natural gas from, the landowners' property. The leases at issue are standard natural gas leases, which consist of a basic boilerplate form contract, often together with an individually negotiated addendum. In 2013, Scout purchased the right to certain of the leases from certain landowners and has received royalties from Chesapeake on the gas produced from these mineral estates.

On March 17, 2014, Scout sought to commence a class arbitration against Chesapeake. Scout's attempt to pursue class arbitration is on behalf of themselves, together with a putative class of thousands of landowners. The claims deal with the calculation of royalties under the terms of the natural gas leases.

---

[10] *Anderson*, 477 U.S. at 249.
[11] *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[12] Fed. R. Civ. P. 56(c)(3).

5

The leases at issue contain the following pertinent arbitration provision:

> ARBITRATION. In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.[13]

Chesapeake asserts that the above-cited lease term does not provide for, or otherwise contemplate, class arbitration; instead it envisions only individual arbitration. Chesapeake filed the instant action and motion for equitable relief seeking to have the Court declare that class arbitration is not available under the leases.

**C. Analysis**

As it turns out, this exact issue was recently decided based on identical language from Chesapeake's leases. The Honorable John E. Jones III, of this Court, held in *Chesapeake Appalachia, L.L.C. v. Ostroski*, 199 F. Supp. 3d 912 (M.D. Pa. 2016), that the lease language at issue does not permit class arbitration. In *Ostroski*, Judge Jones granted summary judgment in Chesapeake's favor and declared that the lease with <u>identical language</u> to the leases in the matter at hand does not permit class arbitration. In doing so, Judge Jones stated:

---

[13] ECF No. 1 at 7 citing Ex. A at SCOUT I-000181.

It is undisputed that the arbitration clause of the Lease does not mention class arbitration.

*****

Our analysis on this point is necessarily abbreviated because the jurisprudence is abundantly clear. Because the plain language of the arbitration clause in the Lease is silent as to class arbitration, we find that the Lease does not allow Defendants to compel it.[14]

With that conclusion in mind, then, I turn my attention to the law of the case doctrine. "The law-of-the-case doctrine rests on a simple premise: 'the same issue presented a second time in the same case in the same court should lead to the same result.'"[15] While I certainly acknowledge that the matter before this Court is not precisely the matter litigated before my colleague in *Ostroski*, it's close. It would be extraordinary indeed for me to hold differently than did Judge Jones when presented with the same lease language, from the same Plaintiff, in the same Court. Moreover, and perhaps more importantly I agree with Judge Jones's holding and sound legal reasoning.

Considering the matter more broadly, I am also cognizant that the United States Supreme Court stated in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* that "a party may not be compelled under the FAA to submit to class arbitration unless

---

[14] Chesapeake Appalachia, L.L.C., 199 F. Supp. 3d at 916- 917.
[15] *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) *citing LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

there is a contractual basis for concluding that the party agreed to do so."[16] "This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."[17] "In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."[18] "But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration."[19]

The Supreme Court declined to allow class arbitration in *Stolt-Nielsen* where the contract referred explicitly to bilateral arbitration but was silent as to class arbitration. "An arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties."[20] "Under the Class Rules [of the American Arbitration Association], 'the

---

[16] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 1775, 176 L. Ed. 2d 605 (2010)
[17] *Id.*
[18] *Id.*
[19] *Id.* at 685-686.
[20] *Id.* at 686.

8

presumption of privacy and confidentiality' that applies in many bilateral arbitrations 'shall not apply in class arbitrations.'"[21]

Moreover, the United States Court of Appeals for the Sixth Circuit in *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett* found that the clause[22] at issue in that case did "not mention classwide arbitration at all."[23] The Sixth Circuit stated:

> The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. A second reason, as the district court correctly observed, is that the clause limits its scope to claims "arising from or in connection with this Order," as opposed to other customers' orders. Crockett responds that the arbitration clause refers to the AAA's Commercial Rules, which themselves incorporate the AAA's Supplemental Rules for Class Arbitration. But the Supplemental Rules expressly state that one should "not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Crockett also responds that the agreement does not expressly exclude the possibility of classwide arbitration, which is true enough. But the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here.
>
> The Supreme Court has made clear that "[a]n implicit agreement to authorize class-action arbitration" should not be inferred "solely from the fact of the parties' agreement to arbitrate." *Stolt–Nielsen*, 559 U.S.

---

[21] *Id.*

[22] That clause stated:
Except as provided below, any controversy, claim or counterclaim (whether characterized as permissive or compulsory) arising out of or in connection with this Order (including any amendment or addenda thereto), whether based on contract, tort, statute, or other legal theory (including but not limited to any claim of fraud or misrepresentation) will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the American Arbitration Association ("AAA").

[23] *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett,* 734 F.3d 594, 599 (6th Cir. 2013).

at 685, 130 S.Ct. 1758. That, at bottom, is the inference that Crockett asks us to make here. The agreement in this case does not provide for classwide arbitration.[24]

This reasoning is also, to my mind, persuasive.

Scout in contrast attempts to construct its arguments on two cases, both inapposite. The first case hails from the Third Circuit, *Opalinski v. Robert Half Int'l Inc.*, and known as *Opalinski II*.[25] Scout contends that although class arbitration was not explicitly mentioned in the clause in the case at bar, it is implicitly assumed. Scout tries to make the same unpersuasive argument that the *Opalinski II* plaintiffs made, which was rejected by the Third Circuit. "Several other Circuits, including the Fifth, Sixth, Seventh, Eighth, and Ninth, have likewise stated that "silence" in an agreement regarding class arbitration generally indicates that it is not authorized by the agreement."[26]

---

[24] *Id.* at 599-600.
[25] *Opalinski v. Robert Half Int'l Inc.*, 2017 U.S. App. LEXIS 1594 (3d Cir. N.J. Jan. 30, 2017).
[26] *Id. citing Eshagh v. Terminix Int'l Co., 588 F.* App'x 703, 704 (9th Cir. 2014) (affirming the district court's grant of a motion to strike class allegations, where the arbitration agreement did not mention class arbitration); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett,* 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643-44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[ ] consent to class arbitration" (internal quotation marks omitted)), abrogated on other grounds by *Oxford Health Plans LLC v. Sutter,* 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) (holding that the district court [*8] did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) (stating "the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter").

Scout also cites to a Pennsylvania Superior Court decision, *Dickler v. Shearson Lehman Hutton, Inc.*, 408 Pa. Super. 286, 299, 596 A.2d 860, 866 (1991) to support its argument. *Dickler* is incongruent for two reasons.

First, *Dickler* was decided in 1991, twelve years before the United States Supreme Court commenced its analysis in this area of law. As I noted in my Order of December 19, 2014, "The rocky path the issue of class arbitrability has traversed over the years began eleven years ago with the United States Supreme Court's plurality decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 123 S. Ct. 2402, 156 L.Ed.2d 414 (2003)." The Supreme Court next decided *Stolt-Neilsen* in 2010. The Sixth Circuit later decided *Reed-Elsiver* in 2013. This Court then decided *Ostroski* in 2016.

Second, the *Dickler* contract clause language is distinguishable from the clause at issue while the *Ostroski* contract clause is identical. I can discern no plausible legal basis for this Court to rely on *Dickler* when decisions, contrary to it, have been made in this Court, various Courts of Appeals and by the United States Supreme Court. Even if I accept Scout's argument that I should find an implicit reference to class arbitration and therefore apply Pennsylvania contract law, including *Dickler*, I would still not find that the plain language of the contract permits class arbitration. "The fundamental rule in contract interpretation is to

11

ascertain the intent of the contracting parties."[27] "In cases of a written contract, the intent of the parties is the writing itself."[28] "The task of interpreting a contract is [an issue of law decided] by a court."[29]

*Dickler* is compelling in one limited way, however. It stated "the Court has consistently reiterated this policy of respecting arbitration agreements."[30] That is precisely what I do in the instant matter.

The contracts at issue here clearly allow for arbitration; but what the plain language of the leases allow is individual or bilateral arbitration, not a class arbitration. The language in this matter is written in the singular, which indicates individual or bilateral arbitration, i.e.: "in the event of a disagreement between lessor and lessee concerning this lease."

The clause at issue in *Dickler* was drafted plurally, and states: "any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors agents and/or employees for me...shall be settled by arbitration." This is what distinguishes *Dickler* - the actual language utilized in the contract.

---

[27] *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Cos.*, 588 Pa. 470, 480, 905 A.2d 462, 468 (2006) citing *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 302 A.2d 347, 351 (1973).
[28] *Id. citing . Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672 (1958).
[29] *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).
[30] *Dickler v. Shearson Lehman Hutton, Inc.*, 596 A.2d 860, 862 (Pa. Super. 1991)

The *Dickler* Court also wrote "we find that the broad agreement [ ] signed by the parties encompasses all controversies ...which may continue through arbitration on a class-wide basis."[31] Therefore, even applying *Dickler*, I still find that judgment should be entered in Chesapeake's favor.

### III. CONCLUSION:

For all of the foregoing reasons, Chesapeake's motion will be granted.

A separate Order will issue granting Plaintiff's motion for summary judgment on Count II and denying Defendants' motion to dismiss Count II. Final judgment will be entered in favor of Plaintiff and against Defendants and this case is dismissed.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[31] *Dickler* at 288.